UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Susan D. Wigenton |
| v. | : | Crim. No. 15-193 (SDW) |
| WILLIAM E. BARONI, JR. and BRIDGET ANNE KELLY | : | |

_____

**UNITED STATES OF AMERICA'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER**
_____

PAUL J. FISHMAN
United States Attorney
970 Broad Street, Room 700
Newark, New Jersey 07102
 (973) 645-2742

On the Memorandum:

Lee M. Cortes, Jr.
Vikas Khanna
David W. Feder
Assistant United States Attorneys

## **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ........................................................................................ 1

**BACKGROUND** ................................................................................................................. 1

**ARGUMENT** ....................................................................................................................... 4

**I.   THE "GOOD CAUSE" DETERMINATION** ..................................................... 5

**II.  THERE IS "GOOD CAUSE" FOR A PROTECTIVE ORDER IN THIS MATTER** .... 6

   A.   THE PROTECTIVE ORDER WILL PROTECT PRIVACY INTERESTS ............................. 6

   B.   THE PROTECTIVE ORDER WILL PROMOTE EXPEDITIOUS DISCOVERY .................... 9

   C.   THE PUBLIC HAS NO RIGHT OF ACCESS TO THE DISCOVERY MATERIALS ........... 10

   D.   THE PROPOSED PROTECTIVE ORDER DOES NOT PREJUDICE THE DEFENDANTS ... 10

**III. THE PROPOSED "UMBRELLA" PROTECTIVE ORDER IS WARRANTED** ...... 12

**CONCLUSION** ................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**CASES**

*Alderman v. United States*,
    394 U.S. 165 (1969) ............................................................................................... 5

*Cipollone v. Liggett Grp., Inc.*,
    785 F.2d 1108 (3d Cir. 1986) ......................................................................... 12, 13

*Glenmede Trust Co. v. Thompson*,
    56 F.3d 476 (3d Cir. 1995) ................................................................................... 5

*Pansy v. Borough of Stroudsburg*,
    23 F.3d 772 (3d Cir. 1994) ............................................................... 5, 7, 8, 9, 12

*Pearson v. Miller*,
    211 F.3d 57 (3d Cir. 2000) ................................................................................. 12

*Seattle Times Co. v. Rhinehart*,
    467 U.S. 20 (1984) .................................................................................. 6, 7, 9, 10

*United States v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995) ................................................................................. 8

*United States v. Anderson*,
    799 F.2d 1438 (11th Cir. 1986) ............................................................................ 5

*United States v. Chow*,
    Crim. No. 14-00196, 2014 WL 2093488 (N.D. Cal. May 19, 2014) ................. 10

*United States v. John Doe, Inc. I*,
    481 U.S. 102 (1987) ............................................................................................. 9

*United States v. Moussaoui*,
    483 F.3d 220 (4th Cir. 2007) ................................................................................ 9

*United States v. Luchko*,
    Crim. No. 06-319, 2007 WL 1651139 (E.D. Pa. June 6, 2007) ................. 7, 9, 13

*United States v. Smith*,
    776 F.2d 1104 (3d Cir. 1985) ............................................................................... 8

*United States v. Smith*,
    985 F. Supp. 2d 506 (S.D.N.Y. 2013) ........................................................... 8, 13

*United States v. Wecht*,
  484 F.3d 194 (3d Cir. 2007) .......................................................................................... 5, 6, 10

**RULES**

Fed. R. Crim. P. 6(e)(2) ............................................................................................................. 9

Fed. R. Crim. P. 16(d)(1) ........................................................................................................... 5

Fed. R. Crim. P. 49.1 ................................................................................................................. 3

**PRELIMINARY STATEMENT**

The Government submits this brief in support of its motion pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure for entry of the attached proposed protective order.

The Government is prepared to produce and has made available to the defendants a voluminous amount of discovery materials. These materials include records, emails, computer data, recordings, telephone records, texts, financial records, materials obtained pursuant to search warrants, the affidavits in support of those search warrants, and other items (the "Discovery Materials").

However, these materials contain a substantial amount of private information about numerous uncharged individuals, including information and communications of a highly personal nature. Accordingly, the Government believes that a protective order is necessary and appropriate to protect the privacy interests raised by the unnecessary disclosure of the Discovery Materials to third parties. The proposed protective order also would expedite discovery in this matter, without in any way prejudicing the defendants' ability to prepare their defense.

Unfortunately, the defense has declined to consent to the entry of a protective order. Accordingly, the Court should grant the Government's motion to prevent the disclosure of the Discovery Materials by the defendants and their counsel to third parties other than for use in preparing the defense in this matter.[1]

**BACKGROUND**

On April 23, 2015, after a 16-month investigation, a grand jury sitting in Newark, New Jersey returned a nine-count Indictment against defendant William E. Baroni, Jr. and defendant Bridget Anne Kelly (the "Defendants"). The Indictment alleges, among other things, that

---

[1] The Government respectfully reserves its right to supplement this submission with oral argument.

defendant Baroni, the former Deputy Executive Director of the Port Authority of New York and New Jersey (the "Port Authority"), and defendant Kelly, the former Deputy Chief of Staff to New Jersey Governor Christopher J. Christie, misused Port Authority property to facilitate and conceal the causing of traffic problems in the Borough of Fort Lee, and thereby to interfere with the localized travel rights of the residents of Fort Lee, in order to punish Fort Lee's mayor, Mark Sokolich, for not endorsing Governor Christie's reelection in November 2013. David Wildstein, the former Director for Interstate Capital Projects at the Port Authority, pled guilty on May 1, 2015, to conspiracy charges for his role in the same scheme. The Indictment was unsealed on May 1, 2015.

As provided by Rule 16 of the Federal Rules of Criminal Procedure and the Court's Standing Order on Discovery, the Government has begun making the Discovery Materials available for inspection. Indeed, the Defendants already have spent time at the U.S. Attorney's Office for that purpose.[2] As is their right, the Defendants have requested copies of various Discovery Materials and undoubtedly will request more. The Government recognizes and appreciates that the Defendants need such access to prepare their defense.

However, the Discovery Materials are vast and consist of more than 1.5 million pages of documents and other materials that the Government obtained from numerous individuals and entities during its grand jury investigation. Much of the material contains private information about uncharged individuals, including emails and texts that are both personal and sensitive communications. Also among the Discovery Materials are records that reflect, among other

---

[2] The Government will necessarily await a ruling by the Court on its motion for a protective order before providing copies of the Discovery Materials to the Defendants.

things, the personal email addresses and telephone numbers of numerous uncharged individuals; financial records; records pertaining to governmental matters unrelated to the allegations contained in the Indictment; emails, texts, and telephone records obtained pursuant to search warrants; and the affidavits submitted in support of those search warrants.

Accordingly, in order to protect the legitimate privacy interests of third parties, the Government proposes a protective order that fully takes into account the Defendants' interests as well. Specifically, the proposed protective order provides as follows:

1. The Confidential Discovery Materials[3] shall be used only in the preparation of the defense in this case.

2. The Confidential Discovery Materials shall not be disclosed to anyone other than the Defendants, defense counsel, and any agent working at the direction of defense counsel in this matter (collectively, the "Defense").

3. Notwithstanding the provisions of Paragraph 2, the Defense shall be permitted to review the Confidential Discovery Materials with prospective witnesses and their counsel to the extent necessary to prepare the defense.

4. If any party, including the Government, intends to disclose publicly (and not under seal) any Confidential Discovery Materials in connection with the filing of a motion, that party shall notify the other parties of its intent to do so no less than three days before filing the motion. If any other party notifies the Court of its objection to such public disclosure and requests that the parties be heard on the issue, the public disclosure of the Confidential Discovery Materials shall not be made without leave of the Court.

5. The Defense shall be permitted to disclose the Confidential Discovery Materials for use at trial, subject to Fed. R. Crim. P. 49.1 and any other applicable law or rules.

6. The Defense shall not disclose the Confidential Discovery Materials beyond the uses described in Paragraphs 1 through 5 of this Order without leave of the Court obtained on application to the Court with notice to the Government.

---

[3] The "Confidential Discovery Materials" are defined in the proposed protective order as "discovery materials, and information contained therein, including records, emails, computer data, recordings, telephone records, texts, financial records, and other items, which will be provided or made available by the Government to defense counsel."

The proposed protective order would not restrict the Defendants' ability to use the Discovery Materials to prepare their defense. Indeed, they could use the materials in support of any pretrial motions. They also would be allowed to show the Discovery Materials to prospective witnesses (irrespective of whether those prospective witnesses, in fact, ultimately testify at trial). The only real restriction is that the Defendants would have to notify the Government three days before publicly filing the Discovery Materials so that the Government has the opportunity to object. In other words, the proposed protective order is meant to prevent the unnecessary public disclosure of the Discovery Materials for purposes unrelated to the preparation of the defense and to avoid the risk that potentially private information reaches the public, especially when so much of it pertains to uncharged individuals. As explained below, there is good cause for entry of the proposed protective order, which will ensure that these voluminous and non-public records not enter the public domain, unless and until absolutely necessary.[4]

## ARGUMENT

There are multiple reasons for the Court to enter a protective order that limits access to the Discovery Materials and prevents these materials from becoming public, including that the proposed protective order will safeguard the privacy interests of dozens of uncharged individuals and will facilitate the expeditious production of expansive discovery to the Defendants. Additionally, courts frequently have approved the type of "umbrella" protective order the Government seeks here, particularly when the materials involved are voluminous. Accordingly, the Government submits that "good cause" exists for entry of the proposed protective order.

---

[4] The Government is prepared to furnish for the Court's and defense counsel's review *in camera* examples of the Discovery Materials that highlight the need for judicial protection.

**I.     THE "GOOD CAUSE" DETERMINATION**

Courts may issue protective orders "for good cause" under Rule 16(d)(1) of the Federal Rules of Criminal Procedure. Rule 16(d)(1) enables the "the trial court . . . , where appropriate, [to] place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165, 185 (1969).

"Good cause" for a protective order under Rule 16(d)(1) " 'is established on a showing that disclosure will work a clearly defined and serious injury.' " *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). The Third Circuit has articulated factors that guide courts' consideration whether materials generated or exchanged during the litigation process should be subject to confidentiality. *See Pansy*, 23 F.3d at 785 (assessing whether to modify confidentiality order that prevented disclosure of civil settlement agreement reached by municipality). These factors include, but are not limited to, whether disclosure will violate privacy interests or cause a party embarrassment, whether confidentiality promotes fairness and efficiency, and whether there are legitimate public interests served by disclosure. *See Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (summarizing analysis in *Pansy*, 23 F.3d at 787-91). These same considerations are relevant to deciding whether good cause exists to restrict the disclosure of materials provided as discovery to criminal defendants under Rule 16. *See Wecht*, 484 F.3d at 211 (adopting *Pansy* formula for "good cause" analysis for protective orders in criminal cases).

"Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation." *Wecht*, 484 F.3d at 209 (quoting *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986)). Thus,

5

unlike in other contexts, "the party seeking to prevent disclosure" need not "overcom[e] a strong presumption in favor of public access." *Id.* at 212 & n.22; *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) (stating that "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information").

## II.     THERE IS "GOOD CAUSE" FOR A PROTECTIVE ORDER IN THIS MATTER

There is "good cause" to issue the proposed protective order in this matter for several reasons. First, in a case that has already attracted intense media scrutiny, the protective order will protect the privacy interests of multiple uncharged individuals and will help avoid unwarranted exposure of the identity and roles of those who were questioned by the Government or the grand jury during the investigation. Second, the order will streamline the efficient and immediate turnover of a vast amount of information that will permit the Defendants to begin preparing for trial without the time-consuming piecemeal redaction of personal or irrelevant information. Third, while the public's interest in disclosure is a relevant consideration, there exists no presumption of public access here, where the proposed order protects only information gathered during the investigation. Finally, and most importantly, the proposed protective order does not prejudice the Defendants' ability to prepare their defense.

### A.     THE PROTECTIVE ORDER WILL PROTECT PRIVACY INTERESTS

There are significant privacy interests of numerous uncharged persons at stake in this case. Entry of a protective order will safeguard individuals from disclosure of irrelevant, personal, and potentially embarrassing information, and avoid fueling public conjecture regarding the actions, roles, or identities of uncharged individuals questioned by the Government during the investigation. The proposed protective order will "prevent the infliction of

unnecessary or serious pain on [these] parties who . . . are entitled to such protection." *Pansy*, 23 F.3d at 787.

The materials generated in the course of the investigation are voluminous and wide-ranging. They include emails, text messages, telephone records, financial records, materials obtained pursuant to Court-authorized search warrants, and the affidavits in support of those search warrants. Importantly, much of the Discovery Materials, including email and text communications, was never intended for public consumption. These materials contain highly sensitive personal communications among a variety of individuals whose names have not necessarily been the subject of any public reports and who may never be charged with any criminal offense. The dissemination of materials of a highly personal nature likely would cause "unnecessary or serious pain," *Pansy*, 23 F.3d at 787, which is particularly lamentable because much of this information is likely "irrelevant to the criminal proceeding," *United States v. Luchko*, Crim. No. 06-319, 2007 WL 1651139, at *7 (E.D. Pa. June 6, 2007). Even if the information is not irrelevant, the proposed order provides the Defendants with ample opportunity to use the documents, including for use in filing motions.

In addition, personal identification information, including email addresses, phone numbers, and business information, is interspersed throughout the Discovery Materials. The Court should exercise its "power[] . . . to prevent abuses, oppression, and injustices" to reduce the risk that the disclosure of private communications or privacy data, much of which is likely irrelevant to the case, will result in harm or public humiliation. *Seattle Times*, 467 U.S. at 35.

These justifications apply with equal force, even if the people implicated enjoy public status. This case has generated considerable public interest in the behavior of multiple public officials, both charged and uncharged. Ordinarily, the "privacy interests" of "public person[s]

7

subject to legitimate public scrutiny" are "diminished." *Pansy*, 23 F.3d at 787. "But, this does not mean that discovery materials, which have no tradition of being publicly accessible, should *automatically* become fodder for selective dissemination at the potential expense of the reputation even of public officials when those officials might not be able to vindicate themselves through the judicial process." *United States v. Smith*, 985 F. Supp. 2d 506, 527-28 (S.D.N.Y. 2013). Rather, the "privacy interests" of even these individuals "should weigh heavily" against the need for disclosure. *United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995).

Also, during a lengthy investigation, such as this one, it is invariably the case that materials are collected that include both personal and professional information about potential witnesses and other individuals. Those materials often reveal or suggest that certain individuals were questioned by the Government during a grand jury investigation. In the eyes of some, such questioning by the Government may foster some suspicions of wrongdoing or complicity by those individuals. This sort of potentially damaging conjecture – which the public disclosure of the Discovery Materials would likely prompt about numerous uncharged individuals – is unwarranted. "[T]he cases that recognize the interests of third parties as justifying non-disclosure of certain materials speak to the unfairness of being stigmatized from sensationalized and potentially out-of-context insinuations of wrongdoing, combined with the inability of these third parties to clear their names at trial." *Smith*, 985 F. Supp. 2d at 526; *see, e.g.*, *United States v. Smith*, 776 F.2d 1104, 1111-14 (3d Cir. 1985) (affirming order sealing bill of particulars that identified unindicted coconspirators on ground that individuals would suffer "clearly predictable injuries to [their] reputations" and lacked any "opportunity to prove their innocence at trial" because they were not charged).

Additionally, the proposed protective order would serve the public's "interest in preserving the confidentiality of investigatory processes so as not to chill such candor in the future." *Luchko*, 2007 WL 1651139, at *9. Indeed, grand jury proceedings are intended to protect the innocent from public comment at a time in which there is only speculation of wrongdoing. *See United States v. John Doe, Inc. I*, 481 U.S. 102, 109 n. 5 (1987) (recognizing that grand jury secrecy "protect[s] [an] innocent accused who is exonerated from disclosure of the fact that he has been under investigation") (quotation omitted); Fed. R. Crim. P. 6(e)(2) (outlining obligations of secrecy in grand jury matters). The public dissemination of the Discovery Materials would significantly negate the Government's extensive efforts to safeguard the secrecy of the grand jury proceedings.

In sum, the Discovery Materials contain "information that . . . if publicly released could be damaging to reputation and privacy. The [G]overnment clearly has a substantial interest in preventing this sort of abuse of its processes." *Seattle Times*, 467 U.S. at 35. Entry of the proposed protective order safeguards this substantial interest.

**B.     THE PROTECTIVE ORDER WILL PROMOTE EXPEDITIOUS DISCOVERY**

Next, the proposed protective order "would promote fairness and efficiency" by facilitating the immediate provision of copies of the Discovery Materials to the Defendants. *Pansy*, 23 F.3d at 787. "[I]t will permit defendants, rather than the government, to sift through the materials to determine what is or is not relevant to their defense." *Luchko*, 2007 WL 1651139, at *8; *see also United States v. Moussaoui*, 483 F.3d 220, 238 (4th Cir. 2007) (describing benefits of discovery process in which "defendant is typically provided with all material that is legally required, as well as additional material that, although not legally required, might in the end be beneficial to the defendant"). It would also obviate the need for the

9

Government to engage in the time-consuming and potentially lengthy process of redacting potentially sensitive or private information from document after document. *See United States v. Chow*, Crim. No. 14-00196, 2014 WL 2093488, at *2 (N.D. Cal. May 19, 2014) (recognizing "practical" need for protective order to avoid "time-consuming line-by-line redaction" of "sensitive material").

For these reasons, the proposed protective order would permit the Government to immediately provide the Defense with copies of the Discovery Materials, and thereby furthers all parties' and the public's interest in a speedy trial. Accordingly, this factor weighs heavily in favor of granting a protective order.

### C. THE PUBLIC HAS NO RIGHT OF ACCESS TO THE DISCOVERY MATERIALS

Unlike filed judicial and trial records, there is no public right of access to pre-trial discovery materials. *See Seattle Times*, 467 U.S. at 30-31. Rather, the sole purpose of discovery is preparation for trial. *Wecht*, 484 F.3d at 209. In any event, the public's interest in these proceedings will eventually be served by an open and public trial. The Government has an obligation to present all admissible evidence to prove its case; the defense has an obligation to use all admissible material in zealously contesting the charges; and the public has an unquestioned right of access to trial proceedings. That constellation of interests will erase any remaining privacy right in the admissible evidence. At present, however, the Discovery Materials are not trial evidence, and the public has no right of access to them.

### D. THE PROPOSED PROTECTIVE ORDER DOES NOT PREJUDICE THE DEFENDANTS

By its terms, the proposed protective order would not restrict the Defendants' ability to use the Discovery Materials to prepare their defense. Specifically, within the bounds necessary to do so, the Defendants explicitly are permitted to show the materials to prospective witnesses

10

(irrespective of whether or not those individuals ultimately testify at trial), and to use the Discovery Materials at trial and in filing motions.

The proposed order merely requires that if any party intends to disclose publicly the Discovery Materials in connection with the public filing of a motion (including via ECF), then that party must give three days' notice to the others. This notice provision provides all parties with the opportunity to object to the public disclosure of the Discovery Materials, without impeding the filing of those motions with the Court (which can be filed under seal at any time, without notice to the other parties). This provision is even-handed and allows the Court, in its discretion, to determine whether the specific Discovery Materials to be filed with the motion should remain confidential at that time, or be publicly filed.

The proposed order therefore does not prejudice the Defendants and only ensures that the Discovery Materials are not disclosed publicly other than through their use in the actual in-court proceedings, or as otherwise permitted by the Court.

*   *   *

The above analysis demonstrates that good cause exists for entry of the proposed protective order. The protective order will protect the privacy of uncharged third parties and prevent unwarranted embarrassment. It will speed the discovery process. Moreover, at this stage of the litigation, the public has no right of access to the materials in question. Accordingly, the Court should enter the proposed protective order.

### III. THE PROPOSED "UMBRELLA" PROTECTIVE ORDER IS WARRANTED

The Government requests entry of the proposed protective order that covers all of the Discovery Materials described above.[5] The Third Circuit has commended the use of so-called "umbrella" protective orders in appropriate situations:

> It is correct that the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order; any other conclusion would turn Rule 26(c) on its head. That does not mean, however, that the party seeking the protective order must necessarily demonstrate to the court in the first instance on a document-by-document basis that each item should be protected. It is equally consistent with the proper allocation of evidentiary burdens for the court to construct a broad "umbrella" protective order upon a threshold showing by one party (the movant) of good cause. Under this approach, the umbrella order would initially protect all documents that the producing party designated in good faith as confidential. After the documents delivered under this umbrella order, the opposing party could indicate precisely which documents it believed to be not confidential, and the movant would have the burden of proof in justifying the protective order with respect to those documents. The burden of proof would be at all times on the movant; only the burden of raising the issue with respect to certain documents would shift to the other party.

*Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1122 (3d Cir. 1986) (internal footnote omitted); *see also Pearson v. Miller,* 211 F.3d 57, 73 (3d Cir. 2000) ("[I]n appropriate circumstances, a district court is empowered to issue umbrella protective orders protecting classes of documents after a threshold showing by the party seeking protection."); *Pansy,* 23 F.3d at 787 ("because of the benefits of umbrella protective orders in cases involving large-scale discovery, the court may construct a broad umbrella protective order upon a threshold showing by the movant of good

---

[5] The proposed protective order also would cover the Government's subsequent disclosure of materials to the Defendants consistent with the Government's obligations pursuant to *Giglio* and the Jencks Act.

12

cause"). Courts have approved the use of umbrella protective orders in criminal proceedings involving voluminous discovery. *See Smith*, 985 F. Supp. 2d at 545-46; *Luchko*, 2007 WL 1651139, at *10-11.

Given the large-scale nature of the discovery involved in this case and the delay that would result from making document-by-document redactions, an umbrella protective order is appropriate. *See Cipollone*, 785 F.2d at 1122-23 (stating that "the umbrella order approach has several advantages over the document-by-document method adopted by the district court in a complex case and . . . caselaw also supports the view that the use of umbrella orders in the district court is a useful method of dealing with large-scale discovery"). Moreover, the umbrella protective order also preserves the Defendants' ability to argue subsequently that a particular document or group of documents is not confidential.

## **CONCLUSION**

For all of the reasons set forth above, good cause exists for the Court to enter the proposed protective order.

Respectfully submitted,

PAUL J. FISHMAN
United States Attorney
970 Broad Street, Room 700
Newark, New Jersey 07102
(973) 645-2742


By: /s/ *Lee M. Cortes, Jr.*
 Lee M. Cortes, Jr.
 Assistant U.S. Attorney

By: /s/ *Vikas Khanna*
 Vikas Khanna
 Assistant U.S. Attorney

By: /s/ *David W. Feder*
 David W. Feder
 Assistant U.S. Attorney


Dated: Newark, New Jersey
 May 19, 2015

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing was served by ECF to:

Michael Baldassare, Esq.
Jennifer Mara, Esq.
Dillon Malar, Esq.
Baldassare & Mara, LLC
570 Broad Street
Newark, New Jersey 07102

*Attorneys for Defendant William E. Baroni, Jr.*


Michael Critchley, Esq.
Critchley, Kinum & Vazquez, LLC
75 Livingston Avenue
Roseland, New Jersey 07068

*Attorneys for Defendant Bridget Anne Kelly*


                                              /s/Lee M. Cortes, Jr.
                                              Lee M. Cortes, Jr.
                                              Vikas Khanna
                                              Assistant U.S. Attorneys


Dated:  Newark, New Jersey
           May 19, 2015